FIRST DIVISION
December 17, 2007

No. 1-05-2324

| | |
|---|---|
| NILES TOWNSHIP HIGH SCHOOL DISTRICT 219, COOK COUNTY, ILLINOIS, | ) Petition For Review from the ) Illinois Educational Labor ) Relations Board |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) No. 2005-CA-0002-C |
| | ) |
| ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and LOCAL 1274 IFT/AFT, AFL-CIO, | ) ) ) |
| Respondents-Appellees. | ) |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Petitioner Niles Township High School District 219 (District) seeks direct administrative review of a decision by respondent Illinois Educational Labor Relations Board (IELRB), that the District committed an unfair labor practice under section 14(a)(1) of the Illinois Education Labor Relations Act (Act) (115 ILCS 5/14(a)(1) (West 2004)). We reverse and remand to the IELRB with directions.

This case arises out of the District's decision not to renew the contracts of three, nontenured probationary teachers: Maria Esther Rivas, Leah Carter and Marcia F. Kiraly. On April 7, 2004, each of these teachers received a written notice that her contract would not be renewed for the following school year. Respondent Local 1274, IFT/AFT, AFL-CIO (Union)

challenged the dismissals by filing grievances on behalf of all three teachers directly with the board of education for the District (Board). The Board denied the grievances, prompting the Union to initiate the next step in the grievance procedure: binding arbitration. The District refused to engage in arbitration, stating the grievances concern decisions to dismiss nontenured teachers and that such decisions are not arbitrable under the parties' collective bargaining agreement (CBA).

Under the CBA, teachers may challenge District actions. The process begins by filing a grievance and ends with binding arbitration. "Grievance" is defined by the CBA as "a complaint that there has been a violation or misinterpretation of any provision of [the CBA]." Limitations apply to nontenured teachers, including limitations on the right to challenge a decision not to renew a contract during the probationary period. Nontenured teachers may challenge such decisions "*only* through the BOARD level of the grievance procedure." (Emphasis added.) Grievances by nontenured teachers that address the administration or interpretation of the CBA, on the other hand, are subject to binding arbitration. See 115 ILCS 5/10(c) (West 2004).

The Union filed a charge with the IELRB, alleging the District's refusal to arbitrate constituted an unfair labor practice in violation of section 14(a)(1) of the Act (115 ILCS 5/14(a)(1) (West 2004)). That section prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2004). Refusal to comply with a binding arbitration agreement is a violation of section 14(a)(1). 115 ILCS 5/14(a)(8) (West 2004); Board of Education of Community School District No. 1, Coles County v. Compton, 123 Ill. 2d 216, 221, 526 N.E.2d 149 (1988). But such refusal is also considered an appropriate means of challenging the issue of

arbitrability. Compton, 123 Ill. 2d at 225-26. There are two grounds for challenging arbitrability: (1) there is no contractual agreement to arbitrate the substance of the dispute; and (2) the dispute is not arbitrable under section 10(b) of the Act (115 ILCS 5/10(b) (West 2004)) because the subject matter of the dispute conflicts with other Illinois law. Chicago Teachers Union, Local 1 v. Illinois Educational Labor Relations Board, 344 Ill. App. 3d 624, 636, 800 N.E.2d 475 (2003).

The District argued the grievances here are not arbitrable because they are directed at the District's decision not to renew the teachers' contracts. A renewal decision is not arbitrable under the parties' CBA and section 10(b) of the Act. The Union disputed the District's interpretation of the grievances. The Union argued that the grievances challenge the District's failure to comply with the procedural requirements of the CBA relating to teacher evaluations and personnel files, and not the decision to dismiss the teachers. The executive director for the IELRB investigated the Union's charge and issued a formal unfair labor practice complaint against the District. See 115 ILCS 5/15 (West 2004); 80 Ill. Adm. Code §1120.30, amended at 28 Ill. Reg. 7973 (eff. May 28, 2004).

The matter was referred to an administrative law judge (ALJ) and argued through summary judgment pleadings. After reviewing the pleadings, the ALJ determined "there is no issue of law or fact sufficient to warrant [a] *** hearing" and decided the matter without the benefit of a hearing. The ALJ held that, although the grievances refer to the dismissal of each teacher, they grieve the deprivation of procedural rights under the CBA and are arbitrable. The ALJ concluded the District violated section 14(a)(1) of the Act by refusing to arbitrate the grievances and recommended the District be ordered to engage in arbitration.

1-05-2324

The IELRB accepted the ALJ's recommendations in a written opinion issued on June 16, 2005. The IELRB agreed there were no genuine issues of material fact and the case could be decided as a matter of law. The IELRB held the grievances were directed at the District's failure to comply with the procedural requirements of the CBA and were arbitrable on this ground.

The District appeals directly to this court under section 16(a) of the Act (115 ILCS 5/16(a) (West 2004) (judicial review of an IELRB decision is to be made directly with the appellate court)).

We first address the IELRB's argument that this court should strike the supplemental record from the record on appeal. The IELRB contends the documents contained in the supplemental record were produced during the early, investigatory stages of the administrative proceeding and were not considered by the ALJ in making its recommendation or by the IELRB in issuing its final decision. The IELRB cites Supreme Court Rule 335(d), which reads: "The entire record before the administrative agency shall be the record on review unless the agency and the petitioner stipulate to omit portions." 155 Ill. 2d R. 335(d); see also Crabtree v. Illinois Department of Agriculture, 128 Ill. 2d 510, 517, 539 N.E.2d 1252 (1989) ("[i]n reviewing an administrative decision, courts are confined to consideration of evidence submitted during the administrative hearing and may not entertain additional evidence or conduct a hearing *de novo*").

The IELRB has not cited authority for the proposition that documents produced during the administrative proceeding but not considered by the agency in rendering a final decision must be excluded from the record on review. Rule 335 requires that the "*entire* record before the administrative agency shall be the record on review." (Emphasis added.) 155 Ill. 2d R. 335(d).

4

We fail to see why the documents produced during the investigatory stage of the IELRB proceeding would not qualify as part of the entire record. Crabtree, cited by the IELRB, does not dictate a different result. That case involved the introduction of evidence on review that was not introduced during the administrative proceeding. Crabtree, 128 Ill. 2d at 514-17. The documents in question here are part of the administrative record.

We next address the standard of review. An agency's decision on a question of law is reviewed *de novo.* Elementary School District 159 v. Schiller, 221 Ill. 2d 130, 142, 849 N.E.2d 349 (2006). A decision involving a question of fact, on the other hand, is afforded deference and will not be reversed unless it is against the manifest weight of the evidence. Comprehensive Community Solutions, Inc. v. Rockford School District No. 205, 216 Ill. 2d 455, 471-72, 837 N.E.2d 1 (2005). Some administrative decisions involve both questions of law and fact. "A mixed question of law and fact asks the legal effect of a given set of facts." Schiller, 221 Ill. 2d at 143. A decision by an administrative agency on a mixed question of law and fact will not be reversed unless it is clearly erroneous. Schiller, 221 Ill. 2d at 143.

The written orders of the ALJ and the IELRB took the position that there are no issues of fact and the case can be decided as a matter of law. So our inquiry is whether the grievances, as alleged, are, as a matter of law, subject to arbitration under the CBA. See Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board, 200 Ill. App. 3d 370, 376, 558 N.E.2d 751 (1990) (the terms of the collective bargaining agreement will dictate whether a grievance is arbitrable). If they are, we must then address whether arbitration of the grievances is prohibited under section 10(b) of the Act. Our review is *de novo.* See Rock Island

5

County Sheriff v. American Federation of State, County & Municipal Employees, AFL-CIO, Local 2025, 339 Ill. App. 3d 295, 297, 791 N.E.2d 57 (2003) (reviewing *de novo* whether grievance was arbitrable under a collective bargaining agreement and statutory law); Midwest Central Education Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board, 277 Ill. App. 3d 440, 444, 660 N.E.2d 151 (1995) (agency's determination on a question of law, such as the construction of a statute, is entitled to deference but is not binding on the court); see also Chicago Teachers Union, Local 1 v. Chicago Board of Education, 19 Pub. Employee Rep. (Ill.) par. 164, No. 2002-CA-0056-C (IELRB October 27, 2003) (whether a grievance is substantively arbitrable is a matter of law reviewed *de novo* by the IELRB).

"The School Code [(105 ILCS 5/1-1 *et seq.* (West 2004))] grants the school board alone the duty to appoint teachers, and a broad power to terminate their employment, either by dismissal or the nonrenewal of their probationary contracts." Midwest, 277 Ill. App. 3d at 446; see also 105 ILCS 5/10-20 (West 2004) (granting school boards broad authority over the "maintenance, operation, and development of any school or schools under the jurisdiction of the board"). A school board's statutory authority to dismiss a nontenured teacher during the probationary period is discretionary and does not require a showing of just cause. See 105 ILCS 5/10-22.4 (West 2004) (granting school board authority "to dismiss any teacher whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it"); Midwest, 277 Ill. App. 3d at 446; see also 105 ILCS 5/24-11 (West 2004) (prescribing method for nonrenewal of probationary teacher contracts); Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board, 165 Ill. 2d 80,

649 N.E.2d 369 (1995) ("just cause" requirement in collective bargaining agreement conflicts with discretion granted under section 10-22.4 of the School Code). This authority cannot be delegated or limited by a collective bargaining agreement. Midwest, 277 Ill. App. 3d at 446. Although procedural requirements may be imposed on dismissals under a collective bargaining agreement, those procedures will be deemed invalid to the extent they violate, are inconsistent with or conflict with Illinois law. 115 ILCS 5/10(b) (West 2004); Board of Education of Rockford, 165 Ill. 2d at 88.

The grievances here allege the CBA requires the District to take certain procedural steps before it can dismiss a nontenured teacher and that the District violated the CBA by failing to take such action with respect to its dismissal of Rivas, Carter and Kiraly. Each grievance begins with the statement: "The Union grieves the *dismissal* of [Rivas/Carter/Kiraly] as it violates various and sundry parts of the [CBA], including Article IV, Sections 1 and 2 and Article V, Sections 1, 2, 6 and 8." (Emphasis added.) The pertinent allegations common to all three grievances read:

> "Insofar as the [District] determined that [Rivas/Carter/Kiraly] should be
>
> released, it is reasonable to conclude that the [District] had some reason to want to
>
> dismiss [Rivas/Carter/Kiraly]. The reason, however, is not apparent in nor
>
> supported by the evaluations. In deciding to [release] [Rivas/Carter/Kiraly], the
>
> Board must make the case that evaluation is meaningless. Evaluation certainly is
>
> not meaningless, as the contract and years of practice (and good educational and
>
> fair labor practice) have demonstrated. Therefore, the firing of
>
> [Rivas/Carter/Kiraly] constitutes a serious breach of the CBA.

Furthermore, the reasons for this dismissal are nowhere documented. While the disregard for evaluation is the most serious breach of the CBA, that disregard indicates a violation of Article V, Sections 1 and 2 regarding teacher personnel files. Article V, Section 1 states that the official board file provides a single point where can be found all 'materials that exist in the district or that have been initiated by district personnel relating to the nature and quality of his/her service and professional conduct.' Since no such material that would indicate poor conduct or service exists in [Rivas'/Carter's/Kiraly's] personnel file, it must be that the administration is [keeping or] accessing another file related to the 'nature and quality' of her service. This is a violation of Sections 1 and 2 of Article V. Such a violation negates then a teacher's right under Article V, Sections 6 and 8."

Kiraly's grievance contains an additional allegation that the District violated section 2 of article IV by failing to provide Kiraly with specific recommendations for improvement following a negative evaluation.

The IELRB, which is charged with deciding the initial question of arbitrability (see Staunton, 200 Ill. App. 3d at 376), decided the grievances are arbitrable because "they were based on the alleged violation of specific sections of the [CBA] dealing with evaluations and personnel files." The IELRB rejected the District's argument that arbitration of the grievances would violate section 10(b) of the Act (115 ILCS 5/10(b) (West 2004)) by delegating the Board's discretionary authority to dismiss nontenured teachers. See 105 ILCS 5/10-22.4 (West 2004). The IELRB explained: "Even where an employer's decision is not arbitrable because it is within the employer's

discretion, a grievance concerning the employer's failure to comply with contractually agreed upon procedures is arbitrable." The IELRB cited Proviso Council of West Suburban Teachers Union, Local 571 v. Board of Education, Proviso Township High Schools, District 209, 160 Ill. App. 3d 1020, 1027, 513 N.E.2d 996 (1987), where the court held a school board may agree to certain procedural limitations as long as those limitations do not conflict with the board's statutory authority.

The IELRB did not look to whether the allegations were sufficient to state a claim under the CBA and, consequently, whether the Union's charge was sufficient to sustain an unfair labor practice complaint. See 80 Ill. Adm. Code §1120.30(b)(5), amended at 28 Ill. Reg. 7973 (eff. May 28, 2004) (a complaint alleging a violation of the Act must state a cause of action on which relief can be granted); Brown County Education Ass'n, IEA-NEA v. County Community Unit School District No. 1, 2 Pub. Employee Rep. (Ill.) par. 1096, No. 85-CA-0057-S (IELRB July 31, 1986) (charging party's allegations will not be accepted wholesale if objective evidence exists that allegations are not based on fact). The IELRB merely concluded that "[t]he grievances contained arguments as to why those sections of the [CBA] had been violated." We are unable to determine what "arguments" the IELRB was referring to. The IELRB said:

"The grievances stated that, in deciding to release the teachers, the District was required to make the case that evaluation is meaningless, and that the District must be accessing a file other than the official personnel file. These statements refer to actions that *** concern procedures for evaluations and personnel files. Thus, the grievances are not inarbitrable on this basis."

The first allegation--that the District is required to make the case that evaluation is meaningless--finds no support in the CBA. The second allegation--that the District is accessing a file other than the official personnel file--is mere conjecture.

To determine whether the grievances state an arbitrable claim under the CBA, we look to the specific provisions of the CBA allegedly violated. See Staunton, 200 Ill. App. 3d at 376. Those sections read:

"ARTICLE IV

EVALUATION OF TEACHERS

AND SUPERVISORY PROCEDURES

Section 1. CRITERIA AND PROCEDURES-GENERAL. Teacher performance shall be evaluated on the basis of direct evaluation or on the basis of objective measures that can be directly and clearly related to the teacher's effectiveness in the classroom and in the performance of his/her other professional duties using [established criteria].

Section 2. NOTIFICATION OF DEFICIENCIES. Where deficiencies are objectively observed the teacher shall be notified of said deficiencies within one (1) week of such observation and specific recommendations for improvement shall be made to the teacher.

\* \* \*

ARTICLE V

TEACHER PERSONNEL FILES

1-05-2324

Section 1.  OFFICIAL BOARD FILE.  Only one official personnel file shall be maintained by the BOARD which shall be the property of the BOARD.  One major purpose of this file shall be to provide the teacher with a single point at which he/she can find any and all evaluations, letters, reports, memoranda and any other documents or materials that exist in the district or that have been initiated by district personnel relating to the nature and quality of his/her service and professional conduct.  This official BOARD file shall be maintained in such a way as to accomplish the major purpose given herein above and under the following conditions.

Section 2.  FILE DEFINED.  'File' shall mean any device for the collection and/or maintenance of documents or materials, a document or other piece of material itself or a collection of such, or any point at which a document or piece of material or collection of such may be held, stored or temporarily rested.

\* \* \*

Section 6.  RIGHT OF FAIR RECORD.  No material in evaluation of the teacher shall be maintained on file that is not in accordance with provisions on teacher evaluation given elsewhere herein.

\*\*\*

Section 8.  RIGHT OF ADDITION AND ATTACHMENT.  Every teacher shall have the right to add any material to his/her official BOARD file and to attach dissenting or explanatory material to any document or other piece of

11

material on file."

We compare these provisions with the allegations made in the grievances. See <u>Staunton</u>, 200 Ill. App. 3d at 376.

Each grievance alleges the District violated sections 1 and 2 of article IV of the CBA by failing to perform an evaluation of the teacher that would support its decision for dismissal. But sections 1 and 2 of article IV do not require that the District take such action. Those sections only require that teachers "be evaluated on the basis of direct evaluation or on the basis of objective measures that can be directly and clearly related to the teacher's effectiveness in the classroom and in the performance of his/her other professional duties" and that the teacher be notified of any deficiency. Nowhere in article IV of the CBA is the District required to support its decision to dismiss a nontenured teacher through an evaluation.

Each grievance also alleges the District violated sections 1, 2, 6 and 8 of article V by not placing a document in the Board's official personnel file explaining its decision to dismiss. But this is not required by article V. Sections 1, 2, 6 and 8 of article V require only that: (1) an official personnel file be maintained by the Board and be available to teachers for review; (2) all material relating to a teachers' service and professional conduct be included in the file; and (3) teachers be able to add or attach their own material to the file. Nowhere in article V is the District required to file documentation in the official Board file that explains its decision to dismiss a nontenured teacher.

Finally, Kiraly's grievance alleges the District violated section 2 of article IV by failing to make recommendations for improvement. This section does not entitle a teacher to an

opportunity to fix her deficient performance. It merely requires that recommendations be made and not, as the Union maintains, that recommendations be made as a prerequisite to dismissal.

The CBA does not require that the District take certain procedural steps before it can dismiss a nontenured teacher. The only limitation on the District's discretionary authority to dismiss a nontenured teacher is that required by law: that the District provide the teacher with written notice stating the specific reasons for dismissal. 105 ILCS 5/24-11 (West 2004). There has been no allegation that the District failed to comply with this requirement.

We find Board of Education of Community High School District No. 155 v. Illinois Educational Labor Relations Board, 247 Ill. App. 3d 337, 617 N.E.2d 269 (1993), cited by the IELRB, unpersuasive. The teacher there received notice from his employer district that his contract would not be renewed on the basis of evaluation results. High School District No. 155, 247 Ill. App. 3d at 339. But the teacher never received an evaluation during his first year of the probationary period and, although he received an evaluation during his second year, the evaluation did not conform with the procedures outlined in the governing collective bargaining agreement. High School District No. 155, 247 Ill. App. 3d at 339. The union representing the teacher filed a grievance challenging the district's decision and the matter proceeded through arbitration. High School District No. 155, 247 Ill. App. 3d at 338-40. On appeal from the arbitration award, this court held the district was barred by *res judicata* from challenging the arbitrability of the grievance. High School District No. 155, 247 Ill. App. 3d at 341-42. Despite its holding, the court went on to discuss the merits of the arbitrability issue in *dicta*. High School District No. 155, 247 Ill. App. 3d at 342. The court said:

13

"Even if the District had preserved the issue of arbitrability for this court's review, we find disingenuous the District's argument that the substance of the grievance was limited to the employee's termination and reinstatement. The District itself submitted as an arbitration issue 'whether the evaluation of [the employee's] performance conformed with the evaluation procedures.' Thus, the District itself placed the issue of its violation of the evaluation procedures before the arbitrator. *** [T]he nonrenewal was not the substance of the grievance."

High School District No. 155, 247 Ill. App. 3d at 342.

Unlike High School District No. 155, there is no sustainable allegation here that the District violated the procedures for evaluation or maintenance of personnel files. As already explained, the grievances allege the District was required to take certain procedural steps before it could dismiss Rivas, Carter and Kiraly from employment. But those procedural steps were not required under the plain language of the CBA.

The IELRB cites its own decisions in support of its position that violations of contractual procedural requirements attending a school decision to dismiss are arbitrable. See High School District No. 155 Education Ass'n, IEA-NEA v. Community High School District No. 155, 5 Pub. Employee Rep. (Ill.) par. 1185, Nos. 89-CA-0021-C and 89-CB-0009-C, cons. (IELRB November 8, 1989); River Grove Classroom Teachers' Ass'n of School District No. 851/2, IEA/NEA v. River Grove School District No. 851/2, 3 Pub. Employee Rep. (Ill.) par. 1019, No. 86-CA-0034-C (IELRB January 30, 1987). There is no question that collective bargaining agreements may place procedural limitations on a school board's ability to dismiss a teacher as

14

long as those limitation do not infringe on the school board's statutory authority. See Board of Education of Rockford, 165 Ill. 2d at 88. But no such limitations are contained in the CBA here. The Union cannot overcome the contractually agreed-on bar to arbitration by simply alleging procedural violations that do not find support in the plain language of the CBA.

Proviso Council, cited for support in the IELRB's written opinion, does not support an opposite conclusion. That case involved the decision to choose between two equally senior tenured teachers to fill a single position. Proviso Council, 160 Ill. App. 3d at 1023. The collective bargaining agreement provided that seniority would be the sole determining factor for the school board's decision. Proviso Council, 160 Ill. App. 3d at 1023. In the event two teachers had identical seniority, the superintendent was to pick the most qualified teacher. Proviso Council, 160 Ill. App. 3d at 1023. The superintendent made a decision and the negatively impacted teacher filed a grievance. Proviso Council, 160 Ill. App. 3d at 1022-24. The grievance went to arbitration and an award was entered requiring the superintendent to reevaluate both teachers. Proviso Council, 160 Ill. App. 3d at 1024-25. The superintendent chose the same teacher for retention following the reevaluation. Proviso Council, 160 Ill. App. 3d at 1025. The negatively impacted teacher and his representative union filed a breach of contract action in the circuit court. Proviso Council, 160 Ill. App. 3d at 1025. The circuit court granted summary judgment to the school board, finding there was no breach of the collective bargaining agreement. Proviso Council, 160 Ill. App. 3d at 1025. At issue on appeal before this court was whether the school board's discharge decision was arbitrable. Proviso Council, 160 Ill. App. 3d at 1026. We held that "the ultimate decision concerning the 'better qualified' teacher was not arbitrable"

because it concerned the school board's exclusive statutory authority to dismiss its teachers. Proviso Council, 160 Ill. App. 3d at 1028.

Proviso Council is not helpful to our analysis because it concerned the right of the school board to make a discharge decision based on qualifications, a decision that is not subject to arbitration because " 'whether or not a teacher is qualified is the ultimate issue which the [school board] in its discretion must decide.' " Proviso Council, 160 Ill. App. 3d at 1027, quoting Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Ass'n, 33 Ill. App. 3d 789, 793-94, 338 N.E.2d 463, 466 (1975). We do not reach this issue because the grievances, as alleged, do not state a claim on which relief can be granted under the CBA.

A grievance under the CBA here is "a complaint that there has been a violation or misinterpretation of any provision of [the CBA]." The grievances here do not allege violations of the CBA and are not arbitrable on this ground. To hold otherwise would allow unions to bypass contractual limitations on the right to arbitrate by alleging procedural violations of a collective bargaining agreement where such violations do not find support under the plain language of the collective bargaining agreement.

We note, finally, that neither the Union nor the IELRB squarely addresses an issue raised by the District: that the language employed in the grievances makes clear that the Union was grieving the dismissal of probationary teachers. For whatever reason, the IELRB chose to find within the four corners of the grievances language alleging procedural violations of the CBA separate and distinct from the issue of dismissal. The Union itself labeled the grievances

16

"dismissal grievances." We reach our holding by looking at the allegations of the grievances and determining whether those allegations are actionable under the CBA. There is no need for this court to decide whether the grievances were legitimately directed toward procedural violations of the CBA or whether the Union artfully crafted the grievances in such a way as to allow arbitration of a claim challenging the dismissals themselves.

We do not imply that a teacher grievance alleging a violation of a collective bargaining agreement–such as improper record keeping–cannot be decided in an arbitration forum. It clearly can, for the reasons and cases cited in the IELRB order. But it is not clear from the order how a party defending against a grievance is to react to a pleading like the one in this case. Without guidance from the IELRB, school districts and their lawyers are groping in the dark--not to mention appellate courts willing to defer to the expertise of the agency.

Having decided that the grievances do not allege violations of the CBA, we need not determine whether arbitration is otherwise prohibited under section 10(b) of the Act. We hold the District was not required to arbitrate the grievances filed here and that the Union's unfair labor charge was insufficient to sustain a complaint under section 15 of the Act (115 ILCS 5/15 (West 2004). The cause is remanded to the IELRB with directions to dismiss the complaint against the District.

Reversed and remanded.

McBRIDE, J., concurs.

R.E. GORDON, J., dissents.

JUSTICE ROBERT E. GORDON, dissenting:

The majority has concluded that the procedural violations claimed by the Union are not violations of the collective bargaining agreement (CBA), there is nothing to arbitrate, and the cause is remanded to the IELRB with directions to dismiss the complaint against the District.

What the majority is actually concluding in its opinion is that a procedural grievance of a probationary teacher who has not been renewed cannot be in violation of the CBA.

## I. Arbitrability Finding

In the instant case, the IELRB determined that the District violated section 14(a)(1) of the Act based on its finding that the District refused to arbitrate the teachers' grievances that there were no teacher performance evaluations and proper personnel files maintained.

The District contends that the issue before the IELRB was whether its dismissal of the nontenured teachers was arbitrable based on the CBA. The District maintains that the grievances were not arbitrable because they concerned the District's failure to renew the contacts of probationary teachers, which is not arbitrable under article IV, section 9, of the CBA. The majority adopts the District's position. The majority and the District claim that the language employed in the grievances makes it clear that the Union was grieving the dismissal of probationary teachers. The IELRB chose to find in the four corners of the grievances language that there was a claim of procedural violations of the CBA by the District failing to maintain personnel files on the teachers and that these procedural violations are separate and distinct from the issue of dismissals.

The majority agrees that improper record keeping can be decided in an arbitration forum

18

for the reasons and cases cited in the IELRB order and then reverses the IELRB and remands the case with directions to dismiss the complaint against the District. This makes no sense.

The IELRB and the Union contend that the issue before the IELRB was whether there were procedural irregularities in the evaluations of the teachers and their personnel files, not the issue of the nonrenewal of the teachers' contracts. The IELRB found that there was no dispute that arbitration of grievances based on the procedural irregularities is required.

Article IV of the CBA set forth the procedural requirements for the evaluation of teachers, requiring that the evaluations be based on objective measures within one week of their observation and that the teacher be given specific recommendations for improvement.

Article V established procedural requirements for maintaining teachers' personnel files requiring that each file include all documents related to the teachers' performance.

Pursuant to section 14(a)(1) of the Act, an unfair labor practice can be found where an educational employer interferes with, restrains, or coerces an employee in the exercise of the rights guaranteed to him under the Act. 115 ILCS 5/14(a)(1) (West 2004). An employer's refusal to arbitrate a grievance considered arbitrable under a collective bargaining agreement or the law constitutes an unfair labor practice. *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board*, 173 Ill. App. 3d 395, 408-09 (1988). An employer may raise the defense that a grievance is not arbitrable under the collective bargaining agreement or under the law. *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board,* 200 Ill. App. 3d 370, 374-76 (1990). When this defense is raised, the IELRB makes the initial determination as to whether the grievance is subject to arbitration "by looking at

whether the grievance falls within the terms of the collective-bargaining agreement." *Staunton,* 200 Ill. App. 3d at 376. If the IELRB determines that the grievance is subject to arbitration, the parties must arbitrate the grievance. *Staunton,* 200 Ill. App. 3d at 376. During the arbitration process, an employer may again raise the defense that the grievance is not subject to arbitration, as well as any affirmative defenses regarding procedural defects in the grievance and its merits. *Staunton*, 200 Ill. App. 3d at 376. The arbitrator will then have the opportunity to make a finding as to whether the issue is subject to arbitration.

An agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1 (2001). In fact, the United States Supreme Court has determined that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353 (1960).

The provisions of the CBA relied on by the Union as the teachers' grievances were as follows: article IV, entitled "Evaluation of Teachers and Supervisory Procedures," section 1, entitled "Criteria and Procedures-General," and section 2, entitled "Notification of Deficiencies," which set forth the procedural requirements for the evaluation of teachers. The procedures included requiring that the evaluations be based on objective measures, the teacher be given notice of performance deficiencies, and the teacher be given specific recommendations for improvement. Article V, entitled "Teacher Personnel Files," section 1, entitled "Official Board File," section 2, entitled "File Defined," section 6, entitled "Right of Fair Record," and section 8, entitled "Right of Addition and Attachment," established the procedural requirements for maintaining a teacher's

personnel file. This included the requirement that each file contain all documents related to the teacher's performance.

In each of the three grievances, the Union first stated the District and it were in accord that "evaluation of a teacher's performance *** and professional duties" are to be measured by the criteria agreed upon by the District and Union. Following this, the Union stated that the District must have had some reason to dismiss the named teacher, but this was not apparent or supported by an evaluation. The Union also stated that the firing of the named teachers constituted a serious breach of the CBA. According to the Union, the reasons for the dismissal were nowhere documented and the District was keeping or accessing another file related to the "nature and quality" of the teacher's service. The Union concluded that this was a violation of sections 1 and 2 of article IV and such a violation negated a teachers' right under article V, sections 6 and 8. As a remedy, the Union stated that should reinstatement be legally unavailable, it sought damages or other relief to make the named teacher whole "for the harm caused by the contract violation."

While grievances refer to the teachers' firing and their contracts, the basis for these matters are clearly the procedural violations in the teachers' evaluations and personnel files. There simply is no language in the grievances to conclude that the Union was attacking only the merits of the firings. Instead, the grievances simply alleged that some reason must have existed, which was not included in the teachers' personnel files, in violation of the provisions of the CBA. In fact, on page 3 of the Districts brief, it agrees that "only a grievance concerning evaluation procedures could possibly have been arbitrable in the instant case."

21

The fact that the grievances identified the subject "Re: Board level grievance of dismissal of [the named teacher]," as argued by the District in support of its position that the Union, was solely challenging its dismissal of the nontenured teachers, puts form over substance. As the IELRB's decision reflects, the line identifying the subject of the grievance, was not dispositive of its nature. The plain text of the grievances specifically identified which section of the CBA were allegedly violated. Those sections pertained to procedures with regard to teachers' evaluations and files. Article IV, section 11, of the CBA expressly provides that grievances of this nature are subject to arbitration.

The majority agrees that grievances by nontenured teachers that address the administration or interpretation of the CBA are subject to binding arbitration. 115 ILCS 5/10(c) (West 2004); however, it finds that the grievances filed in the case at bar do not address the administration or interpretation of the CBA, only the firing of the teachers. I agree that the decision to dismiss the nontenured teachers is not subject to arbitration, but the grievance concerning the evaluation procedures and maintenance of personnel files concerning the teachers is arbitrable. To hold otherwise would mean that when a grievance contains matters that are subject to arbitration and other matters that are not subject to arbitration, the grievance fails and the employee does not have the right to arbitration.

## II. Remedy

The majority has not considered the remedy ordered by the IELRB because it found that the grievances were not subject to arbitration and as a result there was no unfair labor practice.

The District contends that the IELRB lacked authority to impose a remedy. The District

22

argues that only an arbitrator has such authority if it finds a violation of the parties' contract. The District further argues that the remedy providing for loss of pay and benefits to the teachers, with 7% interest, "was to be made irregardless of the arbitrator's ultimate finding as to whether there was a violation of the CBA." The Union and the IELRB contend that, pursuant to the IELRB's decision, any monetary award to compensate the teachers for the delay in arbitration would only be realized if the arbitrator found a violation of the CBA.

A remedy ordered by the IELRB for commission of any unfair labor practice is reviewed under the abuse of discretion standard. *Paxton-Buckley-Loda Educational Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board*, 304 Ill. App. 3d 343, 353 (1999) (Paxton). The IELRB's remedial authority is broad and flexible, and it must attempt to fashion a make-whole remedy based on the evidence to place the parties in the same position they would have been in had the unfair labor practice not been committed. *Paxton*, 304 Ill. App. 3d at 353. However, the issue of damages in this case should be decided by an evidentiary hearing and the remedy to be imposed is a matter for the arbitrator, since it would be premature for the IELRB to anticipate what the arbitration proceedings will disclose.

I believe that the IELRB did abuse its discretion in imposing a remedy. The remedy the District challenges on appeal is loss of pay and benefits, with 7% interest, to the teachers. The District maintains that this remedy is premature and I agree. Even though the IELRB made it clear that "whether there will be any loss resulting from the delay and the amount of the loss will be determined by the findings of the arbitrator," an evidentiary hearing would better serve the question of damages.

23

## CONCLUSION

For the reasons stated, I believe the judgment of the IELRB should be affirmed in part and reversed in part.