2019 IL App (4th) 180488

NO. 4-18-0488

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER LANE, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| THE VILLAGE OF HEYWORTH, a Municipal | ) | No. 16MR242 |
| Corporation; TODD ZALUCHA, Mayor; and | ) | |
| TOM HAYNES, HAROLD BROWN, DAN | ) | |
| BILLINGTON, JIM LAUTERBERG, CLAY | ) | |
| WISEMAN, and LYNNE BARNHILL, | ) | |
| Trustees, | ) | Honorable |
| | ) | Rebecca S. Foley, |
|     Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Steigmann and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1 On February 16, 2016, Mayor Todd Zalucha removed Christopher Lane from his position as the appointed police chief of the Village of Heyworth (Village). On February 18, Mayor Zalucha informed the public of Lane's termination and met with the Village's board of trustees in an executive session to discuss the reasons for termination. On February 23, the Village's board of trustees refused to reinstate Lane. Lane and his attorney sent a letter to Mayor Zalucha advising the mayor that Lane never received the reasons for his removal in writing and, therefore, was not properly removed from his position. On February 25, Mayor Zalucha provided Lane with the reasons for his removal in writing. The reasons were served to the Village's board of trustees at the next regularly scheduled board meeting on March 3, 2016, and the Village's board of trustees voted against reinstatement. Lane sought review of that decision in the circuit

court of McLean County, and the court awarded him back pay, benefits, and court costs.

¶ 2    On appeal, the Village argues the circuit court erred by (1) granting Lane's motion to modify the record on review, (2) finding Lane was removed twice for the same offense, and (3) exceeding its jurisdiction by awarding monetary damages. We reverse.

¶ 3                    I. BACKGROUND

¶ 4    On February 5 and February 16, 2016, Mayor Zalucha met with the appointed police chief, Lane, about his employment with the Village. During the meetings, Mayor Zalucha laid out the grounds for termination and offered Lane the option of resigning, which Lane refused. After discussing the grounds for termination and Lane's refusal to resign, Mayor Zalucha fired Lane on February 16. On February 18, Mayor Zalucha read a statement to the public during an open board of trustees meeting, stating he had terminated Lane's employment as an appointed official and that he would not be discussing the specific reasons for termination due to the private and confidential nature of the information. The board members then went into an executive session, where the Village attorney, Geoff Dodds, and Mayor Zalucha discussed the conversations he had with Lane in the February 5 and February 16, 2016, meetings, as well as the reasons for the termination, including some that had only come to light after the meeting between the mayor and Lane on February 16. No formal vote was taken in the executive session.

¶ 5    The Village board of trustees met in a special open board meeting to vote on Lane's employment status on February 23, 2016. At the meeting, Mayor Zalucha read a prepared statement regarding Lane's removal as chief of police. The public statement said Lane's removal was "due to his performance not meeting expectations" and included references to Lane providing false information to the Village's liability insurance carrier and false statements to the press. The mayor stated it was his opinion the interests of the Village "demand removal."

¶ 6        After listening to comments from the public, the vote to reinstate Lane's employment was defeated by a 4 to 1 vote, with one member abstaining. On February 25, 2016, Lane, through his attorney, sent a letter to Mayor Zalucha informing him Lane had not been properly removed because the mayor failed to provide Lane with any written charges and the board had not been properly informed of the reasons for removal. The letter also outlined the claim Lane was denied due process in the actions leading up to his discharge by the Mayor.

¶ 7        As a result of Lane's letter, Mayor Zalucha served Lane with written charges on the same day, indicating Lane was being terminated for his "continual lack of honesty and for performance well below what is expected for being Chief of Police of the Village of Heyworth." At the next regular Village board meeting on March 3, 2016, Mayor Zalucha explained to the board members the prior attempt to remove Lane was "declared to be null and void." Mayor Zalucha stated he removed Lane on February 25, 2016, and provided him with the written charges against him. Lane's attorney was present and argued why he did not believe the previous effort to terminate his client was properly handled. He also argued on Lane's behalf to the residents of the Village who were present at the meeting. After further public comments, the vote to reinstate Lane was again defeated 4 to 1, with one member absent. Lane was officially terminated.

¶ 8        In April 2016, Lane petitioned the circuit court for a writ of *certiorari* to overturn his termination as police chief of the Village and reinstate him to that position with full back pay and benefits. In May 2016, the Village filed its answer and affirmative defenses, and pursuant to the procedure for review under a common law writ of *certiorari*, the Village filed a record of all matters relating to its decision to remove Lane. In January 2017, Lane filed a motion seeking to strike the Village's answer and affirmative defenses, as well as a motion to modify the record on

review to include only the February 23 and March 3, 2016, meetings and the open and closed session minutes or recordings of those meetings. In February 2017, the Village filed its response. The court granted Lane's motion to modify the record on review. In October 2017, after oral arguments, the court granted the writ of *certiorari*, stating Lane was removed from office twice, on February 16, 2016, and on February 25, 2016, for the same reasons and awarded applicable back pay and benefits.

¶ 9        This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11                            A. Record on Review

¶ 12        The Village argues the circuit court improperly granted Lane's motion modifying the record on review. We agree.

¶ 13        "The Administrative Review Act is applicable only where it is expressly adopted by the act creating or conferring power on the agency involved." *Smith v. Department of Public Aid*, 67 Ill. 2d 529, 540, 367 N.E.2d 1286, 1292 (1977). Common law *certiorari* is "a general method for reviewing the action of agencies and tribunals exercising administrative functions." (Internal quotation marks omitted.) *Smith*, 67 Ill. 2d at 541. It applies where the statute creating the administrative agency does not contain an express reference to the Administrative Review Act and provides no other form of review. *Smith*, 67 Ill. 2d at 541. Our supreme court has stated "the substantial differences that at one time existed between common law and statutory *certiorari* have been all but obliterated." *Smith*, 67 Ill. 2d at 541. The standards of review in an action under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law. *Oliver v. Pierce*, 2012 IL App (4th) 110005, ¶ 12, 964 N.E.2d 666. Courts of review will not interfere with an agency's or tribunal's discretionary authority unless

the exercise of discretion is found to be arbitrary and capricious or its action is against the manifest weight of the evidence. *Hanrahan v. Williams*, 174 Ill. 2d 268, 272-73, 673 N.E.2d 251, 254 (1996). Neither the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2014)) nor the Village's municipal code expressly reference the Administrative Review Law, formerly known as the Administrative Review Act, and neither party argues common law *certiorari* was not the proper method of review in this case.

¶ 14        A writ of *certiorari* draws its origins in chancery and allows a petitioner, without an avenue of appeal or review, an opportunity to obtain limited review of an action by a court or other tribunal with quasi-judicial functions. *Hartley v. Will County Board of Review*, 106 Ill. App. 3d 950, 954, 436 N.E.2d 1073, 1076 (1982). The purpose of the writ is to "have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether that body proceeded according to the applicable law." *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 427, 551 N.E.2d 640, 645 (1990).

¶ 15        In *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 25, 883 N.E.2d 29, 33 (2007), the First District was tasked with determining the applicable record on review of the Illinois Educational Labor Relations Board's (IELRB) decision. The case arose from a dispute over the school district's refusal to arbitrate, which led to the teacher's union filing a charge with the IELRB. *Niles Township High School District 219*, 379 Ill. App. 3d at 24. The executive director of the IELRB investigated the union's charge and issued a formal unfair labor practice complaint. *Niles Township High School District 219*, 379 Ill. App. 3d at 25. The matter was referred to an administrative law judge (ALJ), and the ALJ submitted its recommendations to the IELRB. *Niles Township High School District 219*, 379 Ill. App. 3d at 25. The appellate court, when determining what constituted the

record on appeal, noted Illinois Supreme Court Rule 335(d) (eff. Feb. 1, 1994) provides: " 'The entire record before the administrative agency shall be the record on review unless the agency and the petitioner stipulate to omit portions.' " *Niles Township High School District 219*, 379 Ill. App. 3d at 25 (quoting Ill. S. Ct. R. 335(d) (eff. Feb. 1, 1994)). As a result, it found documents produced during the investigative stage of the IELRB proceeding and not considered by the agency in rendering a final decision were still part of the "entire record." *Niles Township High School District 219*, 379 Ill. App. 3d at 25-26.

¶ 16        Here, section 1-6-6(A) of the Village's municipal code (Village of Heyworth Municipal Code § 1-6-6(A) (adopted Apr. 6, 2009)) states, "[t]he mayor shall be president of the board of trustees as provided by statute." Mayor Zalucha, as the Village board president, reviewed a number of documents and had various allegations investigated by the Village attorney relating to Lane's employment, performance, use of Village property, and involvement with other agencies to determine whether it was in the Village's best interest to remove Lane as police chief. All of this investigative information, as well as previous efforts at remediation or warnings given to Lane, contributed to the mayor's ultimate decision to remove him. Further, at the first executive meeting with the Village board, at least 17 specific instances, which the mayor believed to be some form of misfeasance, malfeasance, or nonfeasance of office, were discussed with the Village board to explain why he felt removal was necessary. At the second executive session, where a vote was taken, two additional examples were provided. The full Village board, with the mayor as its president, is the administrative body in this case. Although the mayor has authority to initiate the removal of the police chief, there must be action by the rest of the board within the specified time to either approve or disapprove of his removal. As a result, the actions of the mayor and the board of trustees must be considered together when evaluating the process

of removal. We see no reason the information obtained in the investigative stage would not be part of the entire record on review. See *Niles Township High School District 219*, 379 Ill. App. 3d at 26. Contrary to Lane's argument, both here and before the trial court, the actions of the board in refusing to reinstate Lane cannot be separated from the basis for his removal in the first place. Otherwise, Lane would appear to concede his removal was proper but merely contend the process was not appropriate. Reviewing the record, this was not the claim. Lane's counsel contested the propriety of removal when he appeared at the second meeting, arguing the reasons for removal were not appropriate and contending his client deserved to be reinstated. Further, Lane contended part of the fatal defect in the proceedings was his alleged removal twice for the same offense in violation of statute. It is not possible to make that determination without knowing the offenses for which he was removed, or for which removal was sought, in each meeting before the board.

¶ 17                                B. Writ of *Certiorari*

¶ 18        The Village argues the trial court erred in granting *certiorari*. We agree.

¶ 19        "The common law writ of *certiorari* provides a means whereby a party who has no avenue of appeal or direct review may obtain limited review over action by a court or other tribunal exercising quasi-judicial functions." *Reichert v. Court of Claims*, 203 Ill. 2d 257, 260, 786 N.E.2d 174, 177 (2003). We review legal questions of statutory interpretation *de novo*. *In re Petition for Annexation to the Village of Bull Valley*, 392 Ill. App. 3d 577, 585, 912 N.E.2d 194, 201 (2009).

¶ 20        Section 3.1-35-10 of the Illinois Municipal Code states:

> "Except where otherwise provided by statute, the mayor or
>
> president may remove any officer appointed by the mayor or

president under this Code, on any written charge, whenever the mayor or president is of the opinion that the interests of the municipality demand removal. The mayor or president shall report the reasons for the removal to the corporate authorities at a meeting to be held not less than 5 nor more than 10 days after the removal. If the mayor or president fails or refuses to report to the corporate authorities the reasons for the removal, or if the corporate authorities by a two-thirds vote of all members authorized by law to be elected disapprove of the removal, the officer thereupon shall be restored to the office from which the officer was removed. The vote shall be by yeas and nays, which shall be entered upon the journal of the corporate authorities. Upon restoration, the officer shall give a new bond and take a new oath of office. No officer shall be removed a second time for the same offense." 65 ILCS 5/3.1-35-10 (West 2014).

¶ 21 The statute references removal "on any written charge," but it does not specify to whom the written charge must be provided and when. It would seem evident the written charge would precede removal, and the parties accepted an interpretation requiring the charge to be provided to Lane prior to termination. We see nothing in the statute precluding such an interpretation. Utilizing the authority set out above, the Village relied on similar provisions within the Illinois Municipal Code for guidance to conclude a comparison of a mayor's authority to employ certain officers may be relevant. It contends efforts to employ municipal officers in violation of the statutory employment limitations have been found to be void *ab initio*. "[W]hen

city officials attempt an act which is *beyond the limit of their power*, the act has no official sanction, and is no more effectual than if performed by nonofficial persons. As a municipal act *it is wholly void*, and, being void, nothing of substance may flow from it." (Emphases added and internal quotation marks omitted.) *Walters v. Village of Colfax*, 466 F. Supp. 2d 1046, 1054-55 (C.D. Ill. 2006). Lane instead relied on case authority under the Administrative Review Act (Ill. Rev. Stat. 1957, ch. 10, ¶ 267) applicable to the Illinois Public Aid Commission to argue the acts of the mayor in the first instance of removal were not void but merely voidable as actions that were an improper exercise of authority. He contends such actions are considered voidable, while only those in excess of authority are void. As a result, he contends he was terminated twice for the same reason in violation of statute. There are several problems with this argument by analogy. First, as noted above, our supreme court says we should examine the entire statute in conjunction with other statutes touching on the same or similar subjects, as the Village has done here. See *Relf v. Shatayeva*, 2013 IL 114925, ¶ 23, 998 N.E.2d 18. The Village's reliance on similar provisions in the Illinois Municipal Code relating to the mayor's appointment authority is not only supported by case law but is arguably more persuasive. Next, the case authority upon which Lane relies does not even relate to the Illinois Municipal Code or municipal agencies but involves the Illinois Public Aid Commission. As such, just as here, the court in *Pearce Hospital Foundation v. Illinois Public Aid Comm'n*, 15 Ill. 2d 301, 154 N.E.2d 691 (1958), the case relied upon by Lane, was bound to consider the interpretation by the administrative agency as an informed source for ascertaining legislative intent. Interpretations of the Administrative Review Act by the Illinois Public Aid Commission, which was formed for a purpose significantly different than municipal government, have no persuasive value for interpretation of the Illinois Municipal Code, contrary to Lane's argument.

¶ 22       The statute is silent as to whether the reasons presented to the board must be in writing. For our purposes, it does not matter since it was clear the mayor was to provide a copy of the charges, in writing, to Lane and did not. Based on our interpretation of the statute, we do not find it requires the reasons presented to the board must be in writing.

¶ 23       Mayor Zalucha attempted to fire Lane without providing him a written charge as required by statute. As no charge was given to Lane, he was not properly fired or "removed" as the statute describes it. Therefore, when the board of trustees voted the first time on February 18, 2016, the action was premature and exceeded its statutory power, thereby voiding the vote of the board. Failing to provide written charges to Lane precluded his removal by the mayor. Absent removal in compliance with the statute, the board did not have the authority to vote since Lane was not properly removed. Thus, Lane remained the police chief of the Village. Our conclusion is also supported by the simple fact Lane continued to be paid during the interim. It does not go unnoticed that Lane's counsel, having argued he was improperly removed in the first instance, did not offer to return Lane's salary for the intervening period between the two votes. Upon receiving a letter from Lane, the Village declared the initial removal void and treated it as if it never happened. Lane posits the illogical argument that, having improperly removed him (which, under his theory, would mean he was not removed), the board could not rescind its action (which would also mean he was not removed). In other words, once improperly removed, he had to remain improperly removed regardless of the wishes of the municipality otherwise.

¶ 24       It defies logic, common sense, and municipal law to assume a municipality, invested by statute with the authority to take a certain action, does not also have authority to rescind that action for whatever lawful reason it may choose. "A town has a right to reconsider or rescind its former action if third parties' rights have not intervened." *Thorp v. King*, 42 Ill. App.

513, 519 (1891). If the board entered into an illegal contract, the party with whom it contracted could not claim a constitutionally protected property interest in the benefit of that contract, even if it acted in detrimental reliance thereon. *Walters*, 466 F. Supp. 2d at 1056. Here, having been legally appointed to his position, plaintiff argues the board could not realize the illegality of its action in his removal and rescind it, thereby ensuring his continued employment. Instead, he claims what is essentially a protected property interest in his unlawful removal. This flies in the face of the holding of *Walters* and cases cited therein, which concluded section 3.1-35-10 of the Illinois Municipal Code, as a procedural statute, does not create a constitutionally protected property interest in continued employment. Under Illinois law, public employees do not have property rights in employment that trigger due process protections. *Levin v. Civil Service Comm'n of Cook County*, 52 Ill. 2d 516, 521-22, 288 N.E.2d 97, 100 (1972). If the statute contains no such protections for employment, it hardly does so for Lane's unlawful removal.

¶ 25        At the March 3 meeting, Mayor Zalucha reread the charge, reminded Lane he had already received the written charge on February 25, and provided the written charge to the board of trustees as well. The board of trustees then voted to not reinstate Lane as police chief, finalizing the removal process. Lane cannot have it both ways—argue he was not properly removed due to a lack of notice with written charges and then, when properly served, say the Village cannot correct the error. If he had no protectable property interest in continued employment, he cannot now claim a protected interest in an invalid removal. Arguably, even if invalidly removed, there is nothing that would have prohibited the board from reconsidering its decision, vacating its previous vote, and voting to reinstate him. Lane would hardly object to the board's reconsideration of its vote under those circumstances.

¶ 26    Contrary to Lane's claim he was removed twice for the same offense in violation of the Illinois Municipal Code, Lane was not removed the first time, as the board vote was an act considered void *ab initio*, and since the board rescinded its action, there was no removal. Even assuming, for the sake of argument, he was, the reasons for his removal at the taking of the second vote were not the same as those at the first. In the February 18 meeting, Mayor Zalucha said he and Dodds learned new information between Lane's removal and that meeting. As a result of efforts by a computer consulting firm hired by the Village to install a new computer and transfer data from Lane's old computer, it was discovered Lane's wife, who was not an employee of the Village, was operating the Village police department's Facebook page from her own personal Facebook account and that Lane was having work e-mails automatically forwarded to his personal e-mail address. That created multiple privacy issues as confidential law enforcement information, criminal records, and juvenile information was more susceptible to data breaches. In addition, they found all police department e-mails since 2013 had been placed in the electronic trash bin, which did not conform to the procedures for public document disposal and could constitute a possible Class 4 felony according to the Village attorney. They also learned Lane was using the Law Enforcement Agencies Data System (LEADS) computerized criminal history records information system for non-police-related inquiries in violation of the LEADS agreement the municipality was required to sign in order to access the records system. The penalties for doing so included not only the possibility of criminal charges but suspension of the Village's access to LEADS.

¶ 27    Lane argued the statements made in the open meetings following the executive session discussions of the board constitute the "reasons for removal" and are controlling in determining whether he was discharged for the same reasons twice. The trial court agreed. Our

- 12 -

review of the statute, coupled with an understanding of the legal process involved, does not lead us to the same conclusion. Under the Open Meetings Act (5 ILCS 120/2(c)(1) (West 2014)), public bodies such as the Village are permitted to enter into an executive session to discuss matters of personnel and discipline. Although no formal vote may be taken in an executive session, the "reasons for removal" would constitute those matters of "personnel" or "discipline" to which the Open Meetings Act refers and are clearly matters regularly addressed by such public bodies in closed session. Section 3.1-35-10 requires the mayor to "report the reasons for the removal to the corporate authorities" at the required meeting to be held between 5 and 10 days after removal. 65 ILCS 5/3.1-35-10 (West 2014). The only reference to "reasons for removal" is found within the context of what the mayor reports to the "corporate authorities." There is nothing requiring a public statement of the reasons at all. The vote must be taken in open session, and although it may make sense from a political or public relations standpoint for the board and/or mayor to make some public statement about the reasons for removing a police chief, there is nothing in the relevant section of the Illinois Municipal Code requiring them to do so. The reasons expressed to the board in the February 23 meeting were in addition to those previously given at the February 16 meeting between the mayor and Lane and those provided to the board on February 18. As a result, the removal on February 25, 2016, was not for the same reasons as February 16.

¶ 28          Even if we considered the reasons expressed in the public statements to constitute the "reasons for removal" contemplated in the statute, the first public statement on February 18 indicated Lane's removal was because his "performance is not meeting expectations." At the second meeting, the reasons for removal were summarized as "continual lack of honesty and performance well below what is expected from the Police Chief." These are two clearly different

statements of reasons. The lack of honesty is a new "offense," and nothing about the statute says the board cannot consider the new offense in light of past transgressions. Thus, even under Lane's theory, his claim fails.

¶ 29 Lane cites *Szewczyk v. Board of Fire & Police Commissioners of the Village of Richmond*, 381 Ill. App. 3d 159, 164, 885 N.E.2d 1106, 1111 (2008), which is inapposite. In that case, the Village of Richmond's president sent a letter to the plaintiff telling him he was " 'terminated' " from his appointed position as police chief. *Szewczyk*, 381 Ill. App. 3d at 159-60. The reasons for the termination were given to the Village of Richmond's clerk and attorney, and a special meeting of the board of trustees was held to vote on the plaintiff's employment. *Szewczyk*, 381 Ill. App. 3d at 161. The majority of the board of trustees voted against termination, and the plaintiff was reinstated and placed on administrative leave. *Szewczyk*, 381 Ill. App. 3d at 167. About a month later, the board of trustees revisited the issue of the plaintiff's status and voted 4 to 1 in favor of termination. *Szewczyk*, 381 Ill. App. 3d at 167. In that case, the court relied upon sections 10-2.1-4 and 10-2.1-17 of the Illinois Municipal Code (65 ILCS 5/10-2.1-4, 10-2.1-17 (West 2006)), referencing the statute before us in *dicta* only. *Szewczyk*, 381 Ill. App. 3d at 167-68. The facts in *Szewczyk* are distinguishable. There, the court found the plaintiff was automatically restored to his position once the Village of Richmond's board of trustees voted against termination. *Szewczyk*, 381 Ill. App. 3d at 170. As a result, his removal a month later, for the same reasons as before, was in violation of the statute. *Szewczyk*, 381 Ill. App. 3d at 170. Here, the board never voted against termination and only one vote was valid.

¶ 30 Based on our ruling, it is clear the trial court's award of back pay and other monetary damages was also improper. Therefore, we reverse the court's judgment on its interpretation of the statute and its award of damages.

¶ 31                                    III. CONCLUSION

¶ 32            For the reasons stated, we reverse the trial court's judgment.

¶ 33            Reversed.

**No. 4-18-0488**

| | |
|---|---|
| **Cite as:** | *Lane v. Village of Heyworth*, 2019 IL App (4th) 180488 |
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 16-MR-242; the Hon. Rebecca S. Foley, Judge, presiding. |
| **Attorneys for Appellant:** | Julie A. Bruch and Karin L. Anderson, of O'Halloran Kosoff Geitner & Cook, LLC, of Northbrook, for appellants. |
| **Attorneys for Appellee:** | Richard F. Blass, of Richard F. Blass & Associates, LLC, of Elmhurst, for appellee. |