# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board,*
**2012 IL App (1st) 101716**

| | |
|---|---|
| Appellate Court Caption | COBDEN UNIT SCHOOL DISTRICT NO. 17, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and COBDEN EDUCATION ASSOCIATION, IEA-NEA, Respondents-Appellees.–COBDEN EDUCATION ASSOCIATION, IEA-NEA, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and COBDEN UNIT SCHOOL DISTRICT NO. 17, Respondents. |
| District & No. | First District, Second Division<br>Docket Nos. 1-10-1716, 1-10-1777 cons. |
| Filed | February 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In consolidated appeals from decisions of the Illinois Educational Labor Relations Board concerning a school district's decision not to renew the contract of a third-year nontenured teacher, the appellate court held that the school district was not required by the parties' collective bargaining agreement to provide the teacher with an arbitration hearing before deciding to discontinue his employment, because the district's right to retain or dismiss a probationary teacher cannot be restricted by a collective bargaining agreement unless the agreement's terms clearly indicate such an intent and the restrictions are valid, and no such intent appeared in the parties' agreement, and, furthermore, the teacher, as a third-tear probationary employee, had no right to be provided with "cause" or reasons for his nonrenewal. |

| | |
|---|---|
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 2008-CA-23S. |
| Judgment | No. 1-10-1716, Reversed.<br>No. 1-10-1777, Confirmed. |
| Counsel on Appeal | Guin Martin & Mundorf, LLC, of Collinsville (Barney R. Mundorf, Christi L. Flaherty, David L. Mannix, and Shawn M. McLain, of counsel), for petitioner.<br><br>Lisa Madigan, Attorney General (Michael A. Scodro, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of counsel), and Cornfield & Feldman (Melissa J. Auerbach and Gilbert Feldman, of counsel), both of Chicago, and Illinois Education Association NEA, of Edwardsville (Wanda Van Pelt, of counsel) for respondent. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.[*]<br>Justice Lampkin concurred in the judgment and opinion.<br>Justice R. Gordon dissented, with opinion. |

**OPINION**

¶ 1    Petitioner Cobden Unit School District No. 17 (District) seeks direct administrative review of a decision by the Illinois Educational Labor Relations Board (IELRB) that the District violated section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1) (West 2006)) by refusing to arbitrate a grievance filed by the Cobden Education Association, IEA-NEA (Association) on behalf of Spencer Cox, a nontenured teacher with the District (appeal No. 1-10-1716). In a separate appeal the Association seeks review of the IELRB's finding that the District did not violate the Act when it refused to arbitrate over the Association's contention that the District failed to provide just cause for the nonrenewal decision (appeal No. 1-10-1777). These appeals have been consolidated. We reverse in part, affirm in part and remand to the IELRB with directions.

---

[*]Justice Robert Cahill participated in the oral argument in this case. Justice Cahill died on December 4, 2011. Justice Patrick J. Quinn read the briefs, reviewed the record and listened to oral arguments online.

¶ 2    The District is an educational employer as defined in section 2(a) of the Act (115 ILCS 5/2(a) (West 2006)). The Association is a labor organization as defined in section 2(c) of the Act and the exclusive representative of all employees employed by the District. On March 19, 2007, the District's board of education (Board) voted not to renew Spencer Cox's employment for the 2007-08 school year. At the time of his nonrenewal, Cox was a third-year nontenured teacher with the District, an educational employee within the meaning of section 2(b) of the Act and a member of the bargaining unit represented by the Association.

¶ 3    On April 16, 2007, the Association filed a grievance on behalf of Cox, alleging that the District violated articles VI, VII and XIII of the parties' collective bargaining agreement (agreement) by its "constructive discharge of Mr. Spencer Cox in violation of his specific rights of employment, a disciplinary act."

¶ 4    The grievance first alleged the District violated article XIII in that it:

"failed to follow the District Evaluation Plan in documenting weaknesses that may have been remediable and by failing to establish a remediation plan. The District failed to follow the Evaluation Plan to help Spencer Cox correct any noted defects in his teaching [and] therefore relied upon extracontractual procedures in deciding not to renew this third year teacher ***. The district fails to give any irremediable cause for non-renewal of employment."

¶ 5    Article XIII, entitled "Employee Evaluation," reads:

"A staff evaluation committee, consisting of two members appointed by the Association President and two administrators appointed by the superintendent, shall be established to review the staff evaluation plan. The committee shall meet each March. Any recommendations for changes in said plan shall be submitted to the Superintendent for review and consideration by the Board of Education."

¶ 6    Next, the grievance alleged the District violated article VII:

"In addition the District failed to maintain a personnel file as required, in that when Spencer Cox and his Association Representative went to review materials which may have been used in determining a decision for nonrenewal, found that the file contained no evidence that would support nonrenewal. The personnel file must contain the evidence and/or documentation used to justify evaluative or disciplinary decision[s]. Materials not contained in the employee's personnel file may not be used to evaluate or discipline the employee in any manner. The District is precluded from maintaining any other file that may be used for discipline or no[n]renewal of Spencer Cox."

¶ 7    Article VII, entitled "Personnel File," reads:

"7.1 Only one official file shall be maintained. No evaluative materials shall be placed in the file unless the employee has had an opportunity to read such material. The employee shall acknowledge that he/she has read any materials evaluative in nature by affixing his/her signature to the copy to be filed. Any materials not contained in the employee's personnel file[ ] may not be used to evaluate or discipline the employee in any manner.

7.2 Within thirty (30) days following the date any material is entered into the

employee's personnel file, the employee shall have the right to respond and his/her response shall be attached to the file. The immediate supervisor will sign the response acknowledging that he/she read the material. A copy of the response will be provided to the immediate supervisor.

7.3 An employee shall have the right to examine his/her file and to have a representative of the Association accompany him/her in such a review. Each file shall contain a record indicating who has reviewed it, the date reviewed, and the reason for such review.

7.4 Upon request, the Employer will reproduce one (1) copy of any materials in the employee's personnel file."

¶ 8    Finally, the grievance alleged the District violated article VI, section 2, of the collective bargaining agreement:

"The District has unfairly, unjustly, arbitrarily and capriciously disciplined Spencer Cox in an unreasoned decision which was executed without just cause."

¶ 9    Article VI, section 2, entitled "Management Rights," reads:

"The exercise of the foregoing powers, rights, authority, duties and responsibilities by the Board of Education in adoption of policies, rules, regulations and practices in furtherance [t]hereof, to discipline with just cause, and the use of judgment and discretion in connection therewith shall be limited only by the specific and express terms of this Agreement, and then only to the extent that such specific and express terms hereof are in conformance with the Constitution and laws of the State of Illinois and the Constitution and laws of the United States of America."

¶ 10    As a remedy, the Association asked that the District offer to voluntarily reinstate Cox and make him whole "in every respect to his continued employment" and/or, in the alternative, asked the arbitrator to order the District to instruct the principal to complete a course in the appropriate use of personnel files and another course in implementing the evaluation plan; that any materials that "reappear" in Cox's personnel file be turned over to him or be expunged by him; that the principal, superintendent and the Board each write a positive letter of recommendation for Cox; that the administration and Board members not make any public or private statement which would disparage Cox's teaching or personal reputation; and order the District to compensate Cox in an amount equal to two years at full salary and benefits with no deductions from the payments.

¶ 11    The Association took the grievance to principal Terri Waddell, who concluded that the grievance was "neither substantively nor procedurally grievable nor arbitrable." On appeal to Superintendent Karl Sweitzer, Sweitzer denied the grievance, stating that it was neither grievable nor arbitrable "because the Board is vested with the absolute and unfettered authority not to re-new [Cox's] probationary employment contract for the 2007-2008 school year." The Association then advanced the grievance to a hearing in front of the Board. The Board denied Cox's grievance in its entirety for the same reasons cited by Superintendent Sweitzer.

¶ 12    On July 18, 2007, the Association filed a demand for arbitration with the American Arbitration Association. On January 7, 2008, the District's attorney sent the Association a

letter, stating that the District believed Cox's grievance was not arbitrable under *Niles Township High School District No. 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 883 N.E.2d 29 (2007), and that the District was cancelling the arbitration hearing and would not continue the grievance to arbitration. On that same date, the District's attorney sent a letter to the American Arbitration Association, stating that the District was cancelling the arbitration. On January 9, 2008, the District sent a letter to the arbitrator, explaining the District's position concerning the arbitrability of Cox's grievance and requesting the arbitrator cancel the arbitration hearing. The District stated that the proper venue for deciding the arbitrability issue was before the IELRB. The arbitration hearing was cancelled.

¶ 13    On January 22, 2008, the Association filed a charge with the IELRB, alleging that the District engaged in an unfair labor practice under section 14(a)(1) of the Act by refusing to arbitrate the grievance.

¶ 14    On May 20, 2010, the IELRB issued a final opinion and order. The IELRB held that the grievance was "contractually arbitrable in its entirety" and that the District violated section 14(a)(1) of the Act by refusing to arbitrate the grievance. The IELRB found that section 10(b) of the Act did not prohibit arbitration of the portions of the grievance concerning the evaluation and personnel case file provisions of the agreement because those provisions do not impermissibly conflict with another statute under section 10(b) of the Act (115 ILCS 5/10(b) (West 2006)), and the grievance contentions involve procedural requirements rather than the merits of the District's decision not to renew Cox's employment. But, the IELRB found that section 10(b) of the Act prohibited arbitration on the issue of whether the District had "just cause" in not renewing Cox's employment because the "just cause" provision of the agreement conflicted with the District's authority under section 10-22.4 of the Illinois School Code (Code) (105 ILCS 5/10-22.4 (West 2006)) to dismiss a nontenured teacher when it determines the interest of the school requires it.

¶ 15    On appeal, the District seeks review of the IELRB's finding that the grievance allegations concerning articles VII and XIII of the agreement are arbitrable, while the Association seeks review of the IELRB's finding that the Act prohibits arbitration of the allegation that the District did not provide just cause for not renewing Cox's employment. The Illinois Federation of Teachers (IFT) has filed an *amicus* brief, contending that the agreement required arbitration of the grievances in full.

¶ 16    We first address the District's contention that the IELRB erred in finding that the District violated section 14(a)(1) of the Act by refusing to arbitrate the Association's grievances concerning articles XIII and VII of the agreement. For the reasons that follow, we hold that the District was not required to provide Cox with an arbitration hearing before deciding to discontinue his employment.

¶ 17    We review *de novo* an agency's decision on whether a grievance is arbitrable under a collective bargaining agreement where, as here, the issues involve the interpretation and application of statutes to undisputed facts. *Niles Township*, 379 Ill. App. 3d at 26; *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142, 849 N.E.2d 349 (2006); *Rock Island County Sheriff v. American Federation of State, County & Municipal Employees,*

*AFL-CIO, Local 2025*, 339 Ill. App. 3d 295, 297, 791 N.E.2d 57 (2003).

¶ 18    Section 10(b) of the Act states:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." 115 ILCS 5/10(b) (West 2006).

¶ 19    Section 14(a)(1) of the Act prohibits "[e]ducational employers, their agents or representatives" from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1) (West 2006). A school district's refusal to comply with a binding arbitration agreement is a violation of section 14(a)(1) of the Act. *Niles Township*, 379 Ill. App. 3d at 24. In determining whether a school district is required to arbitrate a grievance, the IELRB must examine whether the grievance falls within the terms of the collective bargaining agreement. *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 376, 558 N.E.2d 751 (1990). The mere existence of a dispute between an employee and an employer does not make the disputed matter subject to the arbitration procedures of a collective bargaining agreement. *Kostecki v. Dominick's Finer Foods, Inc., of Illinois*, 361 Ill. App. 3d 362, 369, 836 N.E.2d 837 (2005). A school district may refuse to arbitrate a grievance where: (1) there is no contractual agreement to arbitrate the substance of the dispute; or (2) the dispute is not arbitrable under section 10(b) of the Act (115 ILCS 5/10(b) (West 2006)) because the subject matter of the dispute conflicts with Illinois law. *Niles Township*, 379 Ill. App. 3d at 24.

¶ 20    Section 10-22.4 of the Code authorizes a school district to dismiss a teacher "whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the school require it, subject, however, to the provisions of Sections 24-10 to 24-15, inclusive." 105 ILCS 5/10-22.4 (West 2006). Section 24-11 of the Code states that a teacher who is employed for four consecutive years enters into contractual continued service in the district unless the teacher is given written notice of dismissal 45 days before the end of the school term. 105 ILCS 5/24-11 (West 2006). Here, there is no dispute that Cox was a third-year nontenured teacher and was provided proper notice of his nonrenewal.

¶ 21    The appellate court has stated that probationary teachers "have no specific right to be retained by the school board." *Lockport Area Special Education Cooperative v. Lockport Area Special Education Cooperative Ass'n*, 33 Ill. App. 3d 789, 794, 338 N.E.2d 463 (1975) ("[i]n this situation, the probationary teacher is not discharged or dismissed so much as she is not asked to enter into continued contractual service"). While a district may agree to certain procedural limitations in a collective bargaining agreement, the power of the school board not to renew the employment of probationary teachers cannot be delegated or limited. *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 446, 660 N.E.2d 151 (1995).

¶ 22    Article III of the parties' agreement defines a grievance "as any claim by an employee or the Association that there has been a violation of the terms of th[e] Agreement." Here, the Association alleged in part that the District violated article VII of the agreement by failing to place evidence supporting Cox's nonrenewal in his personnel file.

¶ 23    We disagree with the Association's assertion in the grievance that "[t]he personnel file *must contain* the evidence and/or documentation used to justify evaluative or disciplinary decision[s]." (Emphasis added.) A plain reading of the agreement shows no requirement for the District to justify through the personnel file the nonrenewal of a probationary teacher. The agreement merely requires the District to provide employees with access to evaluative materials in their files. Requiring the District to fully document its reasons for not renewing the employment of a probationary teacher would infringe on the District's duty to ensure that only the most qualified teachers are selected for continued employment after a probationary "try out" period. See 105 ILCS 5/10-22.4 (West 2006); 115 ILCS 5/10(b) (West 2006); *Midwest Central*, 277 Ill. App. 3d at 446 (the power not to renew probationary teacher contracts is discretionary and cannot be delegated or limited by a collective bargaining agreement); *Lockport*, 33 Ill. App. 3d at 794 ("the right and power of the Board to retain or dismiss probationary teachers is a substantive and crucial aspect of the Board's general authority to oversee the educational system in its district"). We note that there is no allegation that the District failed to make Cox's personnel file available for his review, and the record shows that Cox's personnel file did contain teaching evaluations, some of which rated him "unsatisfactory."

¶ 24    The Association also alleged that the District violated article XIII of the agreement because the "District failed to follow the District Evaluation Plan in documenting weaknesses that may have been remediable and by failing to establish a remediation plan." We believe that reading article XIII to require a specific employee evaluation before the decision is made not to renew a probationary teacher is unreasonable. Instead, we agree with the District that article XIII simply requires the District to form a committee to review the staff evaluation plan and submit recommendations to the superintendent. Article XIII cannot be read to limit the District's discretion in not renewing contracts for teachers whose continued employment is not in the best interests of the students. The right of the District to retain or dismiss probationary teachers "cannot be restricted by the terms of the [collective bargaining] agreement, unless those terms clearly indicate such to be the intent of the parties and if the restrictions are valid." *Lockport*, 33 Ill. App. 3d at 794. The terms of article XIII do not clearly indicate an intention to base the nonrenewal of a probationary teacher on a teacher's evaluation, and we find no arbitrable issue relating to the staff evaluation plan. See *Niles Township*, 379 Ill. App. 3d at 30-31.

¶ 25    Because remediation plans are only applicable to tenured teachers, we also reject the Association's suggestion that the District's failure to establish a remediation plan constitutes an arbitrable issue. There is nothing in the agreement, the Code or the Act requiring the District to provide a probationary teacher an opportunity to remediate deficiencies before the decision is made not to renew the probationary teacher's employment.

¶ 26    Niles Township, a case with facts similar to those here, is instructive. The Niles high school district (district) decided not to renew the contracts of three probationary teachers. *Niles Township*, 379 Ill. App. 3d at 23. The teacher's union (union) challenged the dismissals by filing grievances with the district on behalf of the teachers. The district refused to engage in arbitration, stating that the grievances concerned decisions that were not arbitrable under the parties' collective bargaining agreement. The union filed an unfair labor charge with the

IELRB, alleging that the district violated section 14(a)(1) of the Act by refusing to arbitrate. The district argued that the grievances were not arbitrable because they were directed at the district's decision not to renew the teachers' contracts, while the union argued that the grievances challenged the district's failure to comply with procedural requirements of the collective bargaining agreement relating to teacher evaluations and personnel files. An administrative law judge (ALJ) found in favor of the union, and the IELRB accepted the ALJ's finding.

¶ 27    On appeal, we reversed the IELRB, finding that the grievances did not allege arbitrable violations of the collective bargaining agreement. *Niles Township*, 379 Ill. App. 3d at 33. We examined the plain language of the collective bargaining agreement in deciding whether the grievances were substantively arbitrable and found no support for the union's contention that the district was required to support its decision to dismiss a nontenured teacher through an evaluation. *Niles Township*, 379 Ill. App. 3d at 30-32. That section of the agreement only stated that "[t]eacher performance shall be evaluated on the basis of direct evaluation or on the basis of objective measures that can be directly and clearly related to the teacher's effectiveness in the classroom and in the performance of his/her other professional duties." (Internal quotation marks omitted.) *Niles Township*, 379 Ill. App. 3d at 29.

¶ 28    We also found no support for a requirement that the district file documentation in the official board file explaining its decision to dismiss a nontenured teacher. *Niles Township*, 379 Ill. App. 3d at 30. Instead, the section only required that: (1) an official personnel file be maintained by the Board and be available to teachers for review; (2) all material relating to a teacher's service and professional conduct be included in the file; and (3) teachers be able to add or attach their own material to the file. *Niles Township*, 379 Ill. App. 3d at 30.

¶ 29    Lastly, we found that the district was not required to provide the teachers with recommendations for improvement before deciding not to renew their employment. The section of the collective bargaining agreement the union pointed to stated: "Where deficiencies are objectively observed the teacher shall be notified of said deficiencies within one (1) week of such observation and specific recommendations for improvement shall be made to the teacher." (Internal quotation marks omitted.) *Niles Township*, 379 Ill. App. 3d at 29. We found this section did not entitle a probationary teacher to an opportunity to fix her deficient performance. It merely required recommendations to be made and not as a prerequisite to dismissal. *Niles Township*, 379 Ill. App. 3d at 30.

¶ 30    We concluded that the agreement did not require the district to take certain procedural steps before dismissing a nontenured teacher, with the exception of providing written notice stating the reasons for dismissal under section 24-11 of the Code (105 ILCS 5/24-11 (West 2004)). *Niles Township*, 379 Ill. App. 3d at 30-31. The union could not overcome the contractually agreed-on bar to arbitration by simply alleging procedural violations that did not find support in the plain language of the collective bargaining agreement. *Niles Township*, 379 Ill. App. 3d at 32.

¶ 31    Here, as in *Niles Township*, a plain reading of the parties' agreement mandates a finding that the Association's grievances are not arbitrable. The District fulfilled the applicable procedural requirements under the agreement by allowing Cox access to his personnel file

and providing him with written notice of his nonrenewal within the mandated time. As in *Niles Township*, there is no provision in the agreement here requiring the District to justify its decision not to renew Cox's employment by including supporting documentation in his personnel file. There is also no provision in the agreement requiring the District to provide Cox with a remediation plan as a precondition to not renewing his employment.

¶ 32    For the aforementioned reasons, we find no arbitrable issue under the agreement based on the District's failure to justify its decision not to renew Cox's employment by documenting his weaknesses, establishing a remediation plan, including documentation in his personnel file, or providing an "irremediable cause" for nonrenewal.

¶ 33    We turn now to the Association's contention that the IELRB erred in finding the grievance contention that Cox was nonrenewed without just cause was not arbitrable under section 10(b) of the Act.

¶ 34    The Association's grievance alleged the District violated section 2 of article VI of the agreement by disciplining Cox "without just cause." That section, entitled "Management Rights," reads:

"The exercise of the foregoing powers, rights, authority, duties and responsibilities by the Board of Education in adoption of policies, rules, regulations and practices in furtherance [t]hereof, *to discipline with just cause*, and the use of judgment and discretion in connection therewith shall be limited only by the specific and express terms of this Agreement, and then only to the extent that such specific and express terms hereof are in conformance with the Constitution and laws of the State of Illinois and the Constitution and laws of the United States of America." (Emphasis added.)

¶ 35    The IELRB found that the Association grievance allegation under section 2 of article VI of the agreement was not arbitrable because that provision conflicted with the District's authority under section 10-22.4 of the Code to dismiss a nontenured teacher when it determines the interest of the school requires it. We agree.

¶ 36    Section 10-22.4 of the Code grants a school board authority "to dismiss any teacher whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it." 105 ILCS 5/10-22.4 (West 2006); *Niles Township*, 379 Ill. App. 3d at 27. Once a teacher in Illinois completes four years of probationary service, he or she enters into contractual continued service and is afforded a variety of procedural protections from dismissal. 105 ILCS 5/24-12 (West 2006).

¶ 37    But, our courts have repeatedly held that "just cause" provisions in collective bargaining agreements do not apply to decisions not to renew probationary teachers and are invalid because such provisions conflict with the statutory responsibilities given to school boards. Neither the Association nor the IFT cites binding authority holding otherwise.

¶ 38    The *Lockport* court suggested the nonrenewal of a probationary teacher does not even qualify as disciplinary action under a collective bargaining agreement requiring a showing of "just cause": "In this situation, the probationary teacher is not discharged or dismissed so much as she is not asked to enter into continued contractual service. [The Code] suggests that the dismissal of a probationary teacher is not the type of punishment envisioned by the word 'discipline' in the collective bargaining agreement." *Lockport*, 33 Ill. App. 3d at 794. The

court held that a school board may not agree to allow binding arbitration as to whether or not there is just cause to dismiss a probationary teacher, as that is a fact to be determined by the board. *Lockport*, 33 Ill. App. 3d at 794.

¶ 39      In *Niles Township*, we stated that "[a] school board's statutory authority to dismiss a non-tenured teacher during the probationary period is discretionary and does not require a showing of just cause." *Niles Township*, 379 Ill. App. 3d at 27. In *Lockport*, the court held that "a school board, authorized by statute to dismiss and retain probationary teachers entirely in its discretion, may not delegate this power by agreeing to dismiss teachers only for just cause and further agreeing to allow binding arbitration as to whether or not there is just cause." *Lockport*, 33 Ill. App. 3d at 794; see also *Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board*, 277 Ill. App. 3d 440, 446, 660 N.E.2d 151 (1995) (the power of the school board not to renew probationary teachers cannot be delegated or limited by a collective bargaining agreement).

¶ 40      In *Rockford*, our supreme court found that implementing a "just cause" provision in a collective bargaining agreement conflicts with the discretion granted to the school board under sections 10-22.4 and 24-12 of the Code to issue a "notice to remedy" to tenured teachers. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 91-92, 649 N.E.2d 369 (1995). The court reasoned that allowing an arbitrator to decide whether a school board acted with just cause in issuing a "notice to remedy" against a tenured teacher was inconsistent with the Code because the power of dismissal is granted to the school board. *Rockford*, 165 Ill. 2d at 91-92.

¶ 41      Similarly, we believe that the "just cause" provision in the agreement here is void under section 10(b) of the Act because it conflicts with the power granted to the District under sections 10-22.4 and 24-11 of the Code to dismiss probationary teachers. 105 ILCS 5/10-22.4 (West 2006); 105 ILCS 5/24-11 (West 2006). Because Spencer Cox was a third-year probationary teacher at the time of his nonrenewal, the Board was not required to provide him with "cause" or reasons for the nonrenewal of his employment with the District.

¶ 42      Finally, we find unpersuasive the IFT's *amicus* contention that there was no waiver of Cox's right to arbitrate because probationary teachers in Illinois do not possess a property right in the renewal of their employment and the right to arbitrate is subject to the Board's nondelegable duties under the Code. *Kyle v. Morton High School*, 144 F.3d 448, 451 (7th Cir. 1998) (under Illinois law, probationary teacher had no property interest in his job); *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 947, 937 N.E.2d 237 (2010) (" '[w]aiver' means the voluntary relinquishment of a known right").

¶ 43      We reverse the finding of the IELRB that the District was required to arbitrate the Association's grievances alleging violations of sections XIII and VII of the agreement. We confirm the IELRB's finding that section 10(b) of the Act prohibited arbitration on the issue of whether the District had "just cause" in nonrenewing Cox's employment. We remand this matter to the IELRB for further proceedings consistent with this opinion.


¶ 44      No. 1-10-1716, Reversed.

¶ 45      No. 1-10-1777, Confirmed.

¶ 46    JUSTICE R. GORDON, concurring in part and dissenting in part:

¶ 47    In the case at bar, we are asked to review two findings by the IELRB: (1) that the union's grievances alleging procedural violations were arbitrable; and (2) that the District's determination not to renew a teacher's employment was not arbitrable. In this appeal, the majority reverses the first finding and confirms the second finding, thus holding that all the issues were not arbitrable. I concur in confirming the second finding. However, for the reasons discussed below, I dissent from the majority's holding that the procedural violations are not arbitrable.

¶ 48    In holding that the procedural violations are not arbitrable, the majority finds that the opinion in *Niles Township* is "instructive" and observes that "the facts [are] similar to those here." *Supra* ¶ 26 (citing *Niles Township*, 379 Ill. App. 3d at 23). I agree that the facts are similar, and I dissent here for the same reasons that I dissented in *Niles Township*. Rather than repeat what I already said, I incorporate here my *Niles Township* dissent. *Niles Township*, 379 Ill. App. 3d at 34-37 (Gordon, J., dissenting). However, I write again to highlight a few points.

¶ 49    In *Niles Township*, as in the case at bar, the IELRB determined that the District had violated section 14(a)(1) of the Act by refusing to arbitrate grievances related to teacher performance evaluations and incomplete personnel files. *Niles Township*, 379 Ill. App. 3d at 34 (Gordon, J., dissenting). In *Niles Township*, as in the case at bar, the IELRB found "within the four corners of the grievances language alleging procedural violations of the [collective bargaining agreement] separate and distinct from the issue of dismissal." *Niles Township*, 379 Ill. App. 3d at 33.

¶ 50    In *Niles Township*, the majority wrote: "We do not imply that a teacher grievance alleging a violation of a collective bargaining agreement–such as improper record keeping–cannot be decided in an arbitration forum. It clearly can ***." *Niles Township*, 379 Ill. App. 3d at 33. In response, I observed that "[t]he majority agrees that improper record keeping can be decided in an arbitration forum" and then reverses the IELRB's finding that it is arbitrable. *Niles Township*, 379 Ill. App. 3d at 34 (Gordon, J., dissenting). "This makes no sense." *Niles Township*, 379 Ill. App. 3d at 34 (Gordon, J., dissenting). I still find that it makes no sense.

¶ 51    In the case at bar, the majority also finds that the collective bargaining agreement "merely requires" the District to provide employees with access to any evaluation materials that are in their files, but that it does not require the District to actually put any of the deciding materials in their files. *Supra* ¶ 23. In other words, the majority finds that the agreement provides a meaningless right: the right to look into files that could be completely devoid of any materials that made a difference in the District's evaluation. Not only does this make no sense, but it also runs counter to the agreement itself. The agreement provides: " 'Any materials not contained in the employee's personnel file[ ] may not be used to evaluate or discipline the employee in any manner.' " *Supra* ¶ 7.

¶ 52    The majority finds this duplicity justified for the following reason. "Requiring the District to fully document its reasons for not renewing the employment of a probationary

-11-

teacher would infringe on the District's duty to ensure that only the most qualified teachers are selected for continued employment after a probationary 'try out' period." *Supra* ¶ 23. However, the majority fails to explain how full disclosure would impair the District's duty to ensure the selection of the most qualified teachers. The majority fails to make the link between full disclosure, on the one hand, and an impaired duty on the other.

¶ 53        For the reasons that I previously stated in my *Niles Township* dissent and for the additional reasons stated above, I must respectfully dissent from the majority's reversal of the IELRB's finding that the procedural grievances are arbitrable.