2026 IL App (1st) 251216-U

No. 1-25-1216

Order filed March 25, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, | ) Petition for Review of Order of ) the Illinois Educational Labor ) Relations Board. |
| Petitioner-Appellant, | ) ) |
| v. | ) No. 2022-CA-0031-C ) |
| ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD; LARA SHAYNE, IELRB Chair; STEVE GROSSMAN, IELRB Member; CHAD D. HAYES, IELRB Member; MICHELLE ISMAEL, IELRB Member; and TRITON COMMUNITY COLLEGE, DISTRICT 504, | ) ) ) ) ) ) ) ) |
| Respondents-Appellees. | ) |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The college did not engage in an unfair labor practice by refusing to comply with an arbitration award because the award was not binding since the grievance filed by the probationary employee's union was substantively inarbitrable.

¶ 2 Petitioner Cook County College Teachers Union, Local 1600 (Union) filed an unfair labor practice charge with respondent Illinois Educational Labor Relations Board (Board), claiming that respondent Triton Community College, District 504 (Triton) violated the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/1 *et seq.* (West 2024)), by refusing to comply with a binding arbitration award. The Board dismissed the charge, determining that the award was not binding because the underlying dispute was substantively inarbitrable. The Union filed a petition for direct administrative review of the Board's decision with this court.

¶ 3 On appeal, the Union argues that Triton committed an unfair labor practice by refusing to comply with the arbitration award because the Union's grievance was substantively arbitrable and the award was binding.

¶ 4 For the reasons that follow, we affirm the final administrative decision of the Board.[1]

¶ 5                       I. BACKGROUND

¶ 6 The Union and Triton were parties to a collective bargaining agreement that governed the work conditions of mid-management employees at Triton. This appeal concerns article 5.7A of that agreement, which provided that new hires would undergo a 180-day probationary period, during which they would be evaluated after the completion of 60, 120, and 180 calendar days. After the 180 day period, the probationary employee would be recommended to Triton's board of trustees for permanent appointment to their position after 180 calendar days, "contingent upon satisfactory evaluations." The employee would "not be considered to have completed the probationary period until" the board of trustees acted on the recommendation. Article 5.7A also

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

provided that "[f]ailure to recommend employment to the Board [of Trustees] because of unsatisfactory performance [was] not a grievable action."

¶ 7    Article 9 of the agreement established a grievance process that applied to any "complaint" by an employee or the Union of a "violation, misinterpretation, or misapplication" of the agreement. Article 9.2A required the grievant to initiate "Step 1" of the process by submitting a written grievance to their supervisor within 10 working days of either the "occurrence of the grievance" or when it "might reasonably have been ascertained." "Step 2" and "Step 3" involved written submissions to and responses from Triton's president and board of trustees. A grievant unsatisfied with those responses could move to "Step 4" by submitting the grievance to be resolved by a binding arbitration. Article 9.2E of the agreement gave the arbitrator "no right" to "alter, amend, modify, nullify, ignore, enlarge, add to, delete, subtract from, or change the provisions" in the agreement, and it forbade the arbitrator from "mak[ing] any decisions or recommendation" except on "the specific issue(s) submitted" to the arbitrator "in writing." Article 9.3 further provided that a grievant's "[f]ailure at any step *** to appeal a grievance to the next step within the specified time limits" would be deemed an "acceptance of the decision rendered at that step."

¶ 8    John Knox, a member of the Union and a mid-management employee subject to the parties' collective bargaining agreement, joined Triton as a probationary employee on March 25, 2019. Triton first evaluated Knox on July 2, 2019, rating his performance as meeting expectations. But on October 29, 2019, Triton conducted a second evaluation, rating his performance as unsatisfactory and informing him that Triton planned to recommend his termination to its board of trustees. On November 19, 2019, Triton terminated Knox's employment.

¶ 9      The next day, November 20, 2019, the Union filed a grievance on Knox's behalf, claiming Triton violated article 5.7A of the parties' collective bargaining agreement and listing "November 19, 2019 (Termination)" as the date of the violation. The grievance alleged that Knox "was called to a termination hearing," where "he was presented with a negative 180 day evaluation and informed he would be terminated at the next board meeting." The grievance further alleged that Knox "previously only received a 60 day evaluation," at which "[t]here was no indication of poor performance"; that Knox "did not receive a 120 day evaluation"; and that "[h]is last evaluation was *** not timely." The grievance requested that Knox be reinstated with full compensation back to October 29, 2019 (the day he was told he would not be recommended for permanent employment). Triton denied the grievance at each step of the internal grievance process, and the Union submitted the dispute to arbitration.

¶ 10      Triton argued to the arbitrator that the underlying grievance was substantively inarbitrable to the extent it concerned Knox's termination, citing article 5.7A's provision that a "[f]ailure to recommend employment to the Board [of Trustees] because of unsatisfactory performance is not a grievable action." Triton further argued that to the extent the grievance concerned the timing or number of Knox's evaluations, the grievance was procedurally inarbitrable because it was filed after the 10-working-day deadline set by article 9.2A of the collective bargaining agreement.

¶ 11      The arbitrator rejected Triton's arguments and issued an award in favor of Knox. First, the arbitrator concluded that he lacked authority to decide whether the grievance was substantively arbitrable and left that issue for the Board to resolve. Next, the arbitrator concluded that Knox's grievance was procedurally arbitrable because it was filed one day after the alleged contractual violation—Knox's termination—and thus was timely. The arbitrator elaborated that the Union did

not " 'grieve' any contract violation regarding the three required evaluations" and that Knox's termination was the "only" alleged violation. Finally, the arbitrator concluded that Triton violated article 5.7A by terminating Knox without conducting the three performance evaluations described in that provision. The arbitrator directed Triton to reinstate Knox to his former position in probationary status with backpay and benefits. Triton refused to comply with the award. See *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 13 (refusing to comply with award "is the accepted means of challenging its validity").

¶ 12    The Union filed an unfair labor practice charge with the Board. The Union claimed that Triton violated section 14(a)(8) of the Act by refusing to comply with a binding arbitration award and derivatively violated section 14(a)(1) of the Act, which forbids an educational employer from interfering with any right the Act confers on educational employees. See 115 ILCS 5/14(a)(1), (a)(8) (West 2024). The Board's executive director investigated the charge, issued a complaint on the Union's behalf, and set the matter for a hearing before an administrative law judge (ALJ). The parties agreed to have the Board render a decision on a stipulated record and waived their right to an evidentiary hearing.

¶ 13    The ALJ issued a recommended decision and order to dismiss the charge. He determined that the grievance was timely only as to Knox's termination, a subject that was substantively inarbitrable because "there was no agreement between the parties to arbitrate such disputes." The Union then sought the Board's review.

¶ 14    The Board issued a final order affirming the ALJ's recommended decision and order. The Board concluded that the arbitrator correctly declined to address substantive arbitrability. But with

that issue now properly before the Board, the Board determined that the dispute was substantively inarbitrable. The Board explained that Triton's failure to recommend Knox's employment because of his unsatisfactory performance was not a grievable action based on article 5.7A's clear and express language that excluded the dispute from arbitration. The Board rejected the Union's argument that this arbitration carve-out provision did not apply to Knox's grievance, explaining that article 5.7A required a probationary employee to be recommended for permanent employment only after receiving satisfactory "evaluations" and that Knox had received "one satisfactory evaluation and one unsatisfactory evaluation." Because the parties specifically excluded the underlying dispute from arbitration, the Board determined that the arbitrator's award was not binding and Triton did not commit an unfair labor practice by refusing to comply with that award.

¶ 15    The Union timely petitioned this court for direct administrative review of the Board's decision.

¶ 16                              II. ANALYSIS

¶ 17    Review of the Board's dismissal of an unfair labor practice charge proceeds directly in the appellate court in accordance with the Administrative Review Law. See 735 ILCS 5/3-101 *et seq*. (West 2024); 115 ILCS 5/16(a) (West 2024). Where the facts are undisputed, as they are here, this court reviews *de novo* the Board's decision as to "whether a grievance [was] arbitrable under a collective bargaining agreement." *Cobden Unit School District No. 17 v. Illinois Educational Labor Relations Board*, 2012 IL App (1st) 101716, ¶ 17.

¶ 18    When an unfair labor practice charge accuses an educational employer of violating sections 14(a)(8) and, derivatively, 14(a)(1) of the Act, as here, the same analysis governs both alleged violations. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor*

*Relations Board*, 165 Ill. 2d 80, 86 (1995). An educational employer has no obligation to comply with an arbitration award unless the award is binding. *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 74. If the parties had "no contractual agreement to arbitrate the substance of the dispute," any award purporting to resolve that dispute is not binding. *Cobden*, 2012 IL App (1st) 101716, ¶ 19.

¶ 19    Substantive or procedural reasons can support a determination that the parties did not agree to arbitrate the substance of their dispute. Substantive arbitrability concerns whether "the parties [were] obligated to submit the subject matter of [the] dispute to arbitration." *Roubik v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 181 Ill. 2d 373, 388 (1998). Procedural arbitrability concerns "whether certain prerequisites to arbitration" were met, including "a party's compliance with time limits for submitting a claim to arbitration." *Id.* Questions of substantive arbitrability generally are left to the court (or in educational labor cases, the Board) to resolve, and questions of procedural arbitrability generally are left to the arbitrator. *Id.*; *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 379 Ill. App. 3d 22, 28 (2007).

¶ 20    Here, the Board correctly concluded that the arbitrator's award did not bind Triton because the underlying dispute was substantively inarbitrable. As the Union acknowledges in its appellate brief, the substance of the dispute concerned whether the parties' collective bargaining "[a]greement required [Triton] to recommend Mr. Knox's full employment" to its board of trustees. But the parties agreed to arbitrate only disputes submitted after the completion of Triton's internal grievance process, and their agreement clearly and explicitly provided that a "[f]ailure to recommend employment to the Board [of Trustees] because of unsatisfactory performance" was not subject to that process. Thus, the parties did not agree to arbitrate the dispute over Triton's

failure to recommend Knox for permanent employment, and the arbitration award purporting to resolve that dispute did not bind Triton. See *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board*, 246 Ill. App. 3d 967, 978 (1993) (arbitration award did not bind educational employer because parties never agreed to arbitrate underlying dispute over whether teacher evaluation was properly conducted).

¶ 21    Contrary to the Union's contention, the Board did not "expand[ ] the scope" of article 5.7A's arbitration carve-out provision in reaching that conclusion. The carve-out applied to any "[f]ailure to recommend employment *** because of unsatisfactory performance." Here, as Triton explained to Knox during his second evaluation, Triton recommended not continuing his employment because he was not meeting the expectations of his position. Thus, Knox did not have excellent evaluations but, rather, one satisfactory evaluation and one unsatisfactory evaluation. Contrary to the Union's suggestion, the second evaluation—deeming Knox's performance unsatisfactory—was not rendered irrelevant by the fact that it was conducted more than 180 days after he began working at Triton. As the Board correctly observed, the collective bargaining agreement's plain terms provided only that probationary employees would be evaluated *after* 60, 120, and 180 days and that recommendation for permanent employment was contingent on satisfactory evaluations. The Union cannot "overcome the contractually agreed-on bar to arbitration by simply alleging procedural violations" unsupported by the collective bargaining agreement's "plain language." *Cobden*, 2012 IL App (1st) 101716, ¶¶ 30-31 (agreement did not require district to place documentation in teacher's personnel file justifying decision not to renew his employment); *Niles*, 379 Ill. App. 3d at 32 (agreement did not require "procedural steps" union alleged were necessary to terminate teachers' employment).

¶ 22　Additionally, although the Board's review of arbitration awards is deferential, the arbitrator here issued no ruling on substantive arbitrability to which the Board could have deferred. The arbitrator expressly declined to address whether the dispute was substantively arbitrable. As the arbitrator correctly understood, the Board, not the arbitrator, resolves questions of substantive arbitrability. *Cobden*, 2012 IL App (1st) 101716, ¶ 19; *Niles*, 379 Ill. App. 3d at 28; *Staunton Community Unit School District No. 6 v. Illinois Educational Labor Relations Board*, 200 Ill. App. 3d 370, 376 (1990). Thus, the Board properly examined whether the Union's grievance fell within the terms of the collective bargaining agreement based on the Board's own analysis of the agreement. *Cobden*, 2012 IL App (1st) 101716, ¶ 19. As explained above, the Board correctly concluded that it did not.

¶ 23　Finally, to the extent the Union's grievance could be read to concern the timing or number of Knox's evaluations rather than Triton's refusal to recommend him for permanent employment, the dispute would have been procedurally inarbitrable because the grievance would have been untimely. The collective bargaining agreement required the Union to initiate the grievance process within 10 working days of either the "occurrence of the grievance" or when it "might reasonably have been ascertained." At the latest, the Union reasonably could have ascertained that Knox's evaluations were "untimely" and that he would not receive three evaluations on October 29, 2019, when Triton informed him after two evaluations that it was going to recommend his termination to its board of trustees. However, the Union did not file a grievance until November 20, 2019, more than 10 working days after that meeting.[2] The arbitrator found the Union's grievance timely

_____

[2]There is some ambiguity in the record as to whether Triton informed Knox of his upcoming termination on October 28 or 29, 2019. The evaluation form was signed October 29, 2019, and the Union's grievance stated that Knox's "termination hearing" occurred on October 29, 2019. However, the ALJ and

because he found the only alleged contractual violation to be Knox's termination. Had the arbitrator found the grievance to have alleged a procedural violation regarding the timing or number of evaluations, the Union's untimely grievance would have compelled the arbitrator to find the dispute procedurally inarbitrable.

¶ 24 In sum, the Board correctly determined that the parties' dispute over Triton's failure to recommend Knox for permanent employment was substantively inarbitrable because article 5.7A of the parties' collective bargaining agreement explicitly carved out such disputes from arbitration. Accordingly, because the underlying dispute was inarbitrable, the Board did not clearly err by determining that the arbitration award did not bind Triton and that Triton committed no unfair labor practice violation by refusing to comply with that award.

¶ 25                                    III. CONCLUSION

¶ 26 For the foregoing reasons, we affirm the final administrative decision of the Board.

¶ 27 Affirmed.

---

the Board found that Triton gave Knox his second evaluation on October 28, 2019. In either case, the Union filed its grievance more than 10 days after this evaluation and meeting.